IN THE UNITED STATES COURT FOR
THE WESTERN DISTRICT OF WISCONSIN

DOC NO
REC'D/FILED
2016 JUL 20 AM 11:00
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

ARQUINCY L. CARR,

    Plaintiff,

-v-              Case No: 16 C 519-wm

MELINDA DERUS,
RANDY SCOTT,
APRIL FUMOY,
CHRIS BUESGEN,
LIZZIE TEGELS,

    Defendants.

## I. JURISDICTION

1. This is a civil action authorized by the 42 U.S.C. Section §1983 to redress the deprivation under color of state law of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C 1331 and 1343 (a)(3). The plaintiff seeks declatory relief pursuant to 28 U.S.C. Section(s) 2201 and 2202. Plaintiff's claims for injuctive relief are authorized by 28 U.S.C Section(s) 2283 and 2284 as well as Rule 65 of the F.C.R.P.

2. The Western District of Wisconsin is an appropriate venue under 28 U.S.C Section 1391(b)(2) because it is where the events giving rise to this claim occured.

1

## II. PLAINTIFF

3. Plaintiff, ArQuincy L. Carr is currently being housed at Jackson Correctional Institution (JCI), P.O. Box 233, Black River Falls, WI 54615. He is a citizen of the U.S.A., resident of the State of Wisconsin and at all times per this complaint, he resided at JCI. (plaintiff is pro se, but may seek attorney)

(plaintiff is currently in segregation at JCI) (pending possible transfer)

## III. DEFENDANTS

4. Defendant Melinda Deius is employed at JCI as an unit manager, domestic violence facilitator, T4C (CGIP) facilitator and at all times mentioned in this complaint she was employed at JCI.

5. Defendant Chris Buessen is the deputy warden at JCI.

6. Defendant Randy Scott is the education director at JCI, he is in charge of school & library functions per JCI

7. Defendant April Fumoy is the 2nd shift library co at JCI

8. Defendant Lizzie Tegels is the warden at JCI.

All defendants are employed at JCI and their address is the same, JCI, N6500 Haipek Road, Black River Falls, WI 54615.

All defendants are being sued by plaintiff in their individual and official capacities.

2

## IV FACTS

9. Plaintiff was transferred to JCI on 8-25-15 to partake in treatment programs. From 8-25-15 until 6-22-16 (placement in scs) he has endured living conditions which violates rights per his Eighth Amendment.

Defendant Melinda Derus runs X building, which is the receiving unit per all new arrivals. On or about 9-23-15 plaintiff wrote to Derus to see if she could provide fly strips or bug zapper. She never responded and he filed an inmate complaint (IC) per numerous flies (which hit him and hung around the servery area). A K. Motti (no longer employed) sent the IC back and sent a memo saying that she spoke with Derus who acknowledged receiving a request from the plaintiff. Motti asked plaintiff to allow Derus a chance to respond. Derus ignored the request and he resubmitted IC. A Jodi Dougherty conducted an investigation in which Derus claims she never received any requests from the plaintiff in concerns over flies. She also states an inmate spoke with her about flies in passing yet she did not recall if it was plaintiff or not. (Plaintiff asserts it was not him, yet seeing that another inmate spoke to her makes her seem less credible) Plaintiff's complaint was dismissed and he believes Derus' false statement played a factor in dismissal. There was no reason for her to fabricate anything. (exhibits A#1-4) (Fly feces may also spread E.Coli: O157:H7)

Defendant Buesgen affirmed dismissal of complaint. (ex. A#5)

Defendant Tegels was sent a request from plaintiff prior to decision of IC. (ex A#9) She rendered a statement after the decision stating that she echoes the decision per the complaint. (A#9)

Per appeal to Madison CCE, plaintiff's issue was dismissed citing that whether Derus received request or not, an abundance of flies on unit was addressed per ICE. (see exhibits A#6-8)

3

10. Defendant Derus ignored plaintiff's issue of moving to another bunk, due to his fear for his health per his neighbor who was constantly bare chested, would scratch, caress, rub various parts of his body, pass gas, there were times when his sheets and pillow case would have traces of blood on them. There would be open sores and red splotches on his person. Plaintiff spoke to inmate who he had issue with (Timothy Conley) and it only escalated into argument.

Plaintiff spoke with Sgt. Hestekind on or about 9.17.15 and was denied a switch in bunks. (verbally denied)

Plaintiff spoke with S/W Niccolai (no longer employed) who sent Derus an e-mail about the issue after she spoke with plaintiff and Sgt. (Derus claims she never received e-mail)

Plaintiff filed IC on or about 9.26.15 after speaking with S/W again on or about 9.25.15, whom asked if plaintiff wanted to do a mediation, he declined. (Ex B#1)

IC was dismissed per J. Dougherty and L. Tegels. (ex B#2)(B#3)

Derus is quoted as saying she had not heard from plaintiff, yet is aware of how staff addressed issue, as well as citing inmates residing in X-building are generally there for 90 days and can wait for move. (B#2)

The defendants state plaintiff did not demonstrate a justified need to change bunks, thus is the basis of his complaint. (B#2)(B#3)

(Plaintiff raised issue of Sgt Hestekind making false statements per investigation, which went unconcerned.) (B#7-14) (Hestekind not a defendant)

Plaintiff's appeal to Madison CCE was rendered 'moot' since plaintiff was moved off X-building on 11.3.15. (The fact that he was subjected to Conley was not addressed.) (ex.B#4-6) (movement from unit does not constitute 'moot')(issue not resolved)

(See exhibits B#7-14 per Sgt Hestekind unnamed-not a defendant, but please notice conduct of JCI staff)(especially Derus and Tegels)

Plaintiff still suffered from lack of issue until Conley moved, maybe 1½ weeks prior to plaintiff being moved

4

11. On or about 9.28.15, plaintiff gave s/w Niccolai (no longer employed at JCI) a request in which she placed on Derus' desk in plaintiffs' view. The request was in concerns of 3rd shift staff who handles mail, which is why plaintiff gave to S/W (C#1)

Derus never consulted with plaintiff.

On or about 10.7.15 he spoke with Derus about numerous issues and told her about Sgt Degner's behaviors on third shift. She tries to intimidate inmates by glaring at them, chastising them and demeaning them. She had made sarcastic remarks on numerous occasions stating, "I get paid to baby sit," or "I have all night to baby sit." She would also come sit in the dayroom staring at inmates, or go to their bunk areas and demean them. Plaintiff asked Derus to look into. She did not.

On or about 10.10.15, Sgt. Degner came into the dayroom due to inmates talking. Plaintiff asked if she could post menu (meals) she refused to stating probably not since guys were talking. A couple of minutes later she stated, "I have all night to babysit" as well as "it'll be a surprise breakfast" (wrote Derus) (C#2)

Plaintiff had to go to officer's station to get her name since she was not wearing identification. She spelled it in a rude manner. Plaintiff has endured many sleepless nights per her tactics. (daily routine with her rudeness)

He wrote to warden Tegels via U.S. mail, whom forwarded the letter to Derus. (C#3) Derus called plaintiff into office on or about 10.19.15 and accused him of not following chain of command. She informed him that she is trying to run two units and does not like the fact that he's implying she doesn't know how to do her job.

He told Derus that he observed s/w place his request on her desk, so if she never got it (as she claims) she should consult with her staff, he also reminded her that he spoke with her on 10.7.15 about Degner.

Per IC which was not even investigated since Derus spoke with Degner, however it was dismissed (IC). Derus stated, "Sgt. Degner is aware her

5

voice carries and does need to speak more quiet because of the echos in X building." (Degner's demeanor, snide remarks was not addressed.)

Per CCE, which was dismissed as well citing the same as ICE. (see exhibits C#4-9) (also see Misc #1 per a letter plaintiff wrote to Cathy Jess, which was forwarded to Tegels)

12. Defendant Derus is the facilitator for DV and T4C (CGIP) which plaintiff is to partake in. Derus has done all that she can to delay his entry into programs, which is retaliation for him standing up to his rights. The issue is still ongoing. (exhibits D #1-6 per DV, did not exhaust) (~~#7 - 10 per T4C ongoing will keep court updated~~)

13. Defendant Randy Scott terminated plaintiff from his job on 11.3.15, per security. Scott terminated him verbally without proper documents or proper protocol. Scott was adamant that he did not know what was going on, it was not his doing, it was per security.
(Defendant Buesgen states Scott never approved me for job)
(Scott never provided plaintiff with termination forms)
(Misc #2 DAI policy 309.00.01)

14. Defendant Chris Buesgen was contacted per plaintiff who had wrote to security director (Kevin Garceau was on vacation, verified that it wasn't him), and Buesgen informed plaintiff in all 'capital letters' that plaintiff was never approved to be hired due to him being a security risk per threatning statements allegedly made about staff.
(plaintiff received document stating he was hired from business office)
(Exhibits E #1, #2, #3)
(ICE filed 11.10.15 Ex EE 9 pages) (prior to receiving termination, in which Buesgen informed plaintiff to file ICE ~~aftr~~ to appeal his decision 11-16-15-Ex. 5)

6

(Plaintiff was called to the education building, in which a CO had document for him to sign per termination, he did not sign)

Plaintiff contacted Buesgen again as well as filed IC (inmate complaint) (Ex E #5) (Inmate complaint Ex #7)

On or about 11.16.15 plaintiff received a response from Buesgen stating "You were removed from job due to a potential threat to security and order of the institution. The security concern involved a staff member in the education building. The decision is supported by the security director." He also contends that the education director (Randy Scott) never approved hire of plaintiff, but since he worked one day, he will be paid one day. (Ex #6)

ICE per appeal rejected which is improper procedure (Ex #7 #10)

On 11.17.15, Defendant Buesgen was doing rounds and plaintiff asked him about ordeal. Who was statements directed at, what was said was the inquiry per plaintiff. Buesgen informed him that he knew, and that the plaintiff doesn't like the answers that he receives.

15. On or about 10.28.15 (Thursday night), Defendant April Fumay called plaintiff to library, due to a request that he sent to the librarian in concerns over him not being allowed to use 'a' typewriter. ('a' is in concerns of a specific typewriter which is the only typewriter that has a digital display and will allow person to view sentences prior to typing, which is ideal for novice typist such as plaintiff, other typewriters are manual). Plaintiff's concern to librarian was an inmate worker (law clerk used the typewriter for approx 20 minutes during plaintiff's library time on or about 10.26.15. On or about 10.28.15, the plaintiff was unable to use

7

the typewriter due to Fumay giving him permission to remove the device and use it in the law clerk's office. (Ex F #1)

Fumay informed plaintiff that she gave law clerk permission to take the typewriter so before plaintiff starts writing notes, he had 'better' get his facts straight.

(plaintiff felt intimidated, belittled, harassed, chastised, disrespected)
(She said this in front of inmates, rather than pulling him aside or speaking to him in office)

The conversation was very one sided and plaintiff did not care for her tone and demeanor and he requested her name, due to her I.D. being backward. She stated her name and plaintiff was attempting to grab scratch paper, she stated she's the regular library C.O. and she's been here a long time. (as in a bragging manner)

Plaintiff consulted a Captain Speckhart, whom requested he write to librarian again and if there's anymore issues contact him. (Ex F #2)

Plaintiff wrote librarian and attempted to speak with him, which he was unable to, yet when he finally spoke with him, he was advised that his request was sent to his supervisor, a Randy Scott, whom never contacted plaintiff. (F #2)

(This is the only ordeal he had with anyone in the education department)

Plaintiff asserts that he was still allowed to use library while Fumay worked, he never received any disciplinary action, was never questioned per alleged threat, either. Plaintiff lost job and was informed he could not have a job in the education building, advised he would not be allowed any job in that department.

8

## V LEGAL

16. Defendants Derus, Buesgen, and Tegels, exposed plaintiff to horse flies which hit him numerous times causing him discomfort and pain, violating his freedom from cruel & unusual punishment per the Eighth Amendment.

> Jackson v Duckworth, 955 F.2d 21, 22 (7th Cir 1992) (... exposure to insects, rodents...); Wilson v Vannotta, 281 F. Supp. 2d 811, 817 (N.D. Ind. 2003 (unsanitary conditions per servery/kitchen) (fly feces may contain E. Coli)

Derus claims she never received request. (She informed a K. Matti that she did), she then stated to J. Daugherty that she did not. She lied and this was intentional.

> Prison staffs actions alone in light of the circumstances maybe sufficient to show malice, Thomas v Stolter, 20 F.3d 298, 302 (7th Cir 1994)

Per DOC policy 310.03 (13), "malicious injury" means injury to the department or a person as the result of hatred, ill will, revenge or as of the result of intent to injure or insult.

Per DOC/DAI Executive Directive 43, Derus violated employees conduct per #7, "falsified records, knowingly giving false information, failing to provide truthful, accurate and complete information when required..." (Derus is not in violation according to Tegels.)

9

Deras admitted that an inmate spoke to her about flies. This shows that flies were an issue and nothing was being done.

Vance v Peters, 97 F.3d 987 (7th Cir. 1996)

"prison officials can not ignore a problem once it
is brought to their attention..."

Defendants Buesgen and Tegels are deputy warden and warden. They failed to investigate, causing plaintiff uncomfortable living conditions and undue stress.

"... when a superior's failure to train amounts to
deliberate indifference to the rights of persons whom
his subordinates come into contact with; the inadequacy
of training may serve as the basis for the § 1983
liability...", Currier v Doran, 242 F.3d 905, 923
(10th Cir 2001); Martin v Sergent, 780 F.2d 1334,
1338 (8th Cir 1985) ("a prison warden may be held
liable for policy decisions which create unconstitutional
conditions.)

There is a sign posted that pertains to closing doors which is not followed by staff or inmates.

Meeks v Gagnon, 95 Wis 2d 115, 119, 289
N.W. 2d 351 (Ct App 1990), (Wisconsin Courts insist
that an agency abide by its own rules)

17. Defendant Derus' refusal to move plaintiff from an ordeal which may have jeopardized his health and safety violates his Eigth Amendment. Plaintiff believes this was intentional per his pushing issues about flies.

> The U.S. Supreme Court noted, "the treatment a prisoner receives while in prison and the conditions under which he is confined are subject to scrutiny under the Eigth Amendment," Helling v McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed 2d 22 (1983); Farmer v Brennan, Id at 837, 114 S.Ct. (1970) (to know and disregard an excessive risk to inmate's health and safety is a 'deliberate indifference' issue)

Defendant Tegels also denied plaintiff request to be moved.

> Grubbs, 841 F.2d 1512, 1528 (10th Cir 1988) ("participated or acquiesced in the Constitutional deprivation of which complaint is made...")

Both defendants showed little or **any** concern over ordeal.

> Hart v Sheahan, 396 F.3d 887, 891 (7th Cir 2005) (conditions); Frost v Norris, 905 F.2d 1147 (8th Cir 1990) (inhumane conditions)

There was no rule stating inmates could not move or request move. Some staff moved inmates upon request.

(Sgt. Hostelund also fabricated story upon investigation, Derus advised)

11

18. Defendant Derus was contacted per issues with 3rd shift Sgt. Degner who caused plaintiff lack of sleep and used snide/sarcastic remarks and statements which are violations of his Eigth Amendment. Derus was informed verbally, yet the Sgt. was not spoken to which means Derus ignored the issue.

> "... sleep undoubtedly counts as one of life's basic needs, conditions designed to prevent sleep might violate the Eigth Amendment."; Harper v Showers, 174 F.3d 716, 720 (7th Cir 1999)

> "the defendant knew about the violation, facilitated it, approved it, condoned it, or turned a blind eye for fear of what (they) might see." Martin v City of Chicago, 349 F.3d 989 (7th Cir 2003)(per Derus)

Tegels sent plaintiffs letter to Derus, rather than responding herself.

> Tegels failed to carry out/perform her job duties Meade, 841 F.2d at 1528 ("... county sheriff can be held liable "for improperly hiring, training, supervising and disciplining his deputees...)
> "prison officals can not ignore an issue once it is brought to their attention"; Peters 97 F.3d 987 (7th Cir 1996); Wolfish 441 U.S. at 835 (1994) (conditions)

12

19. Plaintiff has been having hard time entering into treatment programs which two of the three he needs are facilitated by Defendant Derus. He asserts she is retaliating against him due to his past issues with her. This issue is ongoing, which is continuously causing plaintiff emotional suffering, mental anguish and playing a role in his conditions of confinement, custody level.

Babcock v White, 102 F.3d 267, 275 (7th Cir 1996)
(per retaliation) also Gomez v Randle, 680 F.3d 859, 866-67 (7th Cir 2012) (per retaliation)

Heise, 420 Fed Appx 593; 2011 U.S. App LEXIS 8792 (per programs)

Wis Stats 301.047 (3)(d) (the department may not have any decision regarding an inmates condition of confinement including discipline or an inmate's decision to participate or not to participate in a rehabilitative program...)
(Derus claims plaintiff must be a certain time frame prior to be accepted into programs.)
"No agency may promulgate a rule which conflicts with state law,"
Wis Stat §227.10(2)

Per Harassment: (per Derus)
Wis Stat §947.013 (1)(a) course of conduct composed of a series of acts...over a period of time; §947.013 (1)(m)(b) course of conduct which commits acts which harass or intimidate and serves no legitimate purpose...

Defendants Buesgen and Tegels condone her (Derus') behavior
(Derus doesn't even have the common courtesy to speak with plaintiff about programs...)

13

**20.** Defendant Randy Scott failed to offer due process when terminating plaintiff thus violating Eigth Amendment rights. (AAI 309.00.01)

Defendant Chris Buesgen failed to offer due process when terminating plaintiff thus violating Eigth Amendment rights (DAI 309.00.01)

Defendants caused plaintiff to lose job, they failed to provide him with reason of loss of job, they failed to give him proper termination forms, they failed to suspend him with pay until investigation was completed, they failed to offer him another job at equal pay, plaintiff was never contacted per allegation to defend himself... (DAI 309.00.01)

"punishing an inmate for conduct which is not postscribed by rules or policy is arbitrary government action. Reeves, v Pettcox 19 F 3d 1060, 1062 (5th Cir 1994); Leslie v Doyle, 125 F.3d 1132, 1136-37 (7th Cir 1997) (protection for inmates is Eigth Amendment not procedural due process); Meeks v Mcbride, 81 F.3d 717, 720-21 (7th Cir 1996) (relying on hearsay, no evidence without plaintiffs side); "termination calls for some orderly process, however informal" Morrisey v Brewer, 408 U.S. 471, 482; (plaintiff never contacted to address issue) Wolfish 441 U.S. 520, 525 (1979) Anderson v Cecke 2000 WI 40, 234 Wis 2d 626, 610 N.W. 821, 98-0715 (The department must follow its own rules, it is not harmless error for an agency to disobey its own procedural regulations) (DOC 309.001?)

Wis. Stat 942.01 (1)(2)(4) (defamation per Buesgen) (labeling plaintiff threat, security risk, unduly, unjustly)

14

21. Defendant April Fumay violated plaintiff's Eigth Amendment protections.

    Pearson v Welborn, 971 F.3d 732, 738 (7th Cir 2006) (prison officials may not discipline or otherwise take adverse action against a prisoner for exercising a constitutional right)

    (plaintiff asserts he had a right to contact librarian and address issue in order to file grievance, Fumay intervened) Powers v Snyder 484 F.3d 929, 932 (7th Cir 2007)

    (suspicious timing or statements by the defendant suggesting that they were bothered by the protected conduct); Culver v Gorman & Co, 416 F.3d 540, 545-50 (7th Cir 2005); Mullin v Gettinger, 450 F.3d 280, 285 (7th Cir 2006)

    Babcock v White, 102 F.3d 267, 275 (7th 1956) (An official who takes action in retaliation for a prisoner's exercise of a Constitutional right may be liable to the prisoner for damages)

Defendant Fumay also violated numerous work rule violations per Executive Directive 43; (based upon Executive Directive 43 9/04)
    2) failed to follow policy/procedure
    3) ... engaged in unauthorized activities
    4) negligence in performance of job duties
    13) intimidation, interfering with, harassing, demeaning ... in dealing with others
    18) solicitation on duty (fraternization, favoritism)

23) ... improper use of badge or identification (wearing backwards)

29) ... knowingly permit, encourage others to do so (unauthorized, improper use of state property)

30) theft or unauthorized possession of state property

Cygon v DOC, 388 F.3d 1092 (Executive Directive) (#13)
(per work rule violations)
Calhoun v Detella 319 F.3d 936 (7th Cir 2003) (verbal harassment)

Defendant Randy Scott whom is education director is also in violation of the same work rule violations since according to ICE investigation, he also authorized illegal use/removal of state property

Scott also ignored the problem since he never responded to plaintiff when the librarian forwarded request to him

Farmer v Brennan 511 U.S. 825, 835 (1994) (ignoring)

(writing to librarian was a protected liberty interest, beginnings to file ICE)
(Fumey attempted to interfer)

Defendants Buesgen and Tegels disregarded plaintiff's rights and seemed to condone staff's actions

City of Chicago 349 F.3d 989 (7th Cir. 2003); Brennan, 511 U.S. at 842 (failure to discipline subordinates)

"an act of retaliation for the exercise of a constitutionally protected right is actionable under Sec. 1983..." Howland v Kilquist, 833 F.2d 639, 644 (7th Cir 1987)

16

22. Plaintiff hereby states all defendants violated his Eighth Amendment rights as well as some First Amendment rights, they caused him mental anguish, embarrassment, harassment, intimidated him, demeaned him, caused him stress, grief, with no regards of his concerns, rights, health or safety.

"The Eighth Amendment protects more than an inmate's physical health and safety, It also protects his dignity as a human being." Bowers v Pollard, 2009 US Dist LEXIS 21164, pg 41-42 (E.D. Wis); Hudson v Palmer, 468 U.S. 517, 526-27, 104 S.Ct 3194, 82 L.Ed 2d 393 (1984) (per Eighth Amendment); Hart v Sheahan 97 F.3d 887, 891 (7th Cir) ("conditions of confinement")

Calhoun v Detella, 319 F.3d 936 (7th Cir 2003) ("... psychological torture"); Paskalea v DC 227 F.3d 433, 443-44 (D.C. Cir 2000) (mental and emotional distress); Smith v Wade, 461 U.S. 30, 51 (1983) ("reckless or callous disregard" for plaintiff's rights); Memphis Cmty Sch. Dist v Stachuva, 477 U.S. 299, 308 n.11 (1986) (mental and emotional injury) Bridges 557 F.3d at 555 ("exercising his Constitutional rights); Snyder 484 F.3d 929, 932 (7th Cir 2007) (rights to file grievances)

Defendants have repeatedly used the same course of conduct which amounts to various harassment, intimidation, abuses of authority, yet it simply comes down to their own misuse of laws, policies or ignorance of...

17

## VI RELIEF

23. Plaintiff seeks the following:
- award for punitive, nominal and compensatory damages,
- jury trial,
- wants all defendants to be disciplined for their violations of policy and procedures as well as violations to plaintiff's rights,
- wants all rehabilitative programs terminated from him in accordance with Wis Stats. 301.047 (3)(c) & (3)(d),
- wants placement at minimum custody to acquire work release,
- wants defendants to pay him a part time four rate from the time he was terminated until 6-22-16 (time he was placed in seg) (11-2-15 - 6-22-16),
- defendants to incur all charges pertaining to §1983 claim,
- immediate transfer upon case # issuance of claim to another facility,
- freedom from further harassment,
- criminal charges against defendants per harassment, defamation
- investigation by DOJ per policies/procedures of JCI
- investigation of ICE department/CCE department

I verify all statements are true to the best of my knowledge and recollection. *ArQuincy Carr*

Dated this 14th day of July, 2016

Respectfully,

*ArQuincy L. Carr*

ArQuincy L. Carr
JCI
P.O. Box 233
Black River Falls, WI 54615

CC:

18